I have two argued cases today. The first of these is No. 14-1601, In Re Big Baboon, Inc., Mr. Munzinger. Thank you, Your Honor. May it please the Court, Richard Munzinger on behalf of Appellant Big Baboon, Inc. There are three unique structural aspects to the Big Baboon business database that are disclosed in Claim 17 of that patent. And for the purpose of this argument, I will be addressing Claim 17, which incorporates Claim 16 and adds an additional structural limitation. Each of these structural limitations were ignored below by the patent board and the examiner. Two of them were read out, and one of them was completely misinterpreted based on the clear, unambiguous language of Claim 17. Specifically, the three unique structural features of the Big Baboon patent are, No. 1, instead of organizing the business process, and by business process I mean generally a sale of a good, instead of organizing that business process around physical departments within a company, the patent instead creates a new term called a business domain. And that term, business domain, is defined in the specification in numerous places as a process. And specifically, there are four business domains, not any business domains, four specific ones. And that's what makes it patentable? It's not just the domains, Your Honor. It's these three structural features working together. So you take individual workers and you assign them a functional role in one of the four sub-processes based on whether they serve a role in that process. Here's an example. A person in an accounting department, so a physical accounting department, would not normally, through prior art of the SAP R3, would not be tied to the sales department. There would have to be transfer of information from department to department. In the Big Baboon system, you would look at the accounting employee and you would ask, what role does that person serve in the business? If, for example, they need sales information in order to track revenue or to track profit, then you would assign that person a role in the products domain, even though they're an accounting employee. And one of the unique features of the Big Baboon system is it doesn't have to be within the same company. You could have someone in a completely different country in a completely different company who's assigned a role within the business domain of products or payments and therefore becomes a part of the process. So what's functional about the name? It's not just a name. The products, payments, performance, and personnel are actually, it's a structural division of the business into four parts. The products portion of the process, which is disclosed in the specification, comprises essentially from order to return. The payments portion of the process deals with invoicing to payment. Performance is financial performance, and it deals with taking payment through financial statements. Suppose you divide it into five. Would that be a distinct invention? If you were to divide it into five business domains, then it would not, if it was a domain that was beyond what was disclosed here, it would not be covered by the patent, Your Honor. And would that be patentable? I would have to see the rest of the patent, Your Honor. But if it were, here we have two other structural limitations that work in conjunction with the business domains. It's not the business domains alone that make the invention patentable. It's the interplay between the three structural components. So organizing it into this business domain where you assign two workers, I'm just going to use two workers as an example, you assign them a role. So you have a worker, let's say, in sales, in products, and then another worker in accounting, for my example. Here's the next structural component of the invention that was not considered by the patent board, and that is you have a single item table stored in a database with item records with business domain specific fields. Now what that means is you have a spreadsheet, one spreadsheet, which is critical, which is stored in the database, and each of these employees is accessing the exact same database. In this sense, it's like a fishbowl. Where is the structure that you're describing? You're describing how the domains are used, but the claims only relate to the database. Correct, but the domain, again, the three structural components have to be read together. The structure comes from the fact that once you organize the employees around the process, you then use a fishbowl style of database. In other words, everyone can see what's put in and put out, and you link those people from different portions of the process through a field in the single spreadsheet, so that any time someone in sales or anyone else puts information into this fishbowl spreadsheet, it's instantly available to the person in accounting. How is that different from Oracle? Because it's the same information. It's one instance of information, and that's the third structural component that is so critical. In the R3, you can tell by looking at the cancellation process. There's a good example of this, which is discussed in the joint appendix at 11771 and 11772. That cancellation process involves the creation of a new document. In other words, a new instance of data, which is then transferred and communicated through the R3 system, so that any time you take an action in the R3 system, you're creating a new instance of data. Now, there's a master record, as was discussed by the board and by the examiner, and that master record is constantly updated and is what is used to transfer information to the different departments to reduce duplication, but that's not what the patent requires. The patent is much narrower. One instance of data, in other words, it's a fishbowl. What you put in, if you're going to change it, you change that item. There's no passing on. There's no copying. There's no transferring, and what that does is... So that's just like a spreadsheet of information, and you've got access authority from different places in the company. Why is that patentable? The difference is that when anyone in the business makes a change to the information, it's the same instance of information that's being changed. That makes it impossible for there to be any error in different instances of data. So in the R3 system, where you have different people with access to the database system, a person in cancellation, when they cancel a sale, they're not changing the same item record that was created by the person in sales. They're creating a new cancellation record, and then that new cancellation record is used to update a master record in the database, which in turn then copies information and makes transfers to other departments so that they can see the updated information. It achieves the same result, close to it, the R3, in the sense that you have people receiving information very quickly, but it does it through a completely different structure than the Big Bad Worm system. Where in the written description does this critical aspect of the invention appear? In Claim 16 of the patent, the statement is made that the item table contains item records, each containing business domain-specific fields pertaining to a plurality of domains. So what that means is each cell in the spreadsheet must pertain to at least two different departments, let's say products and sales. Next, whereby once information has been input and committed, it is immediately available for viewing. This is the fishbowl. The second the information is typed by the person in sales, it is immediately available for viewing by the individual in accounting. Then finally, Claim 17, where the information stored within a field of an item record is the only instance of that information within the entire database. So it's those three portions of the claim together that disclose... So basically you have to have the added limitation of Claim 17, so you're really only defending Claim 17? We are defending Claim 17 here, Your Honor. Okay, so where in the written description does that instance, the only instance of information, where is that described? In the specification?  I don't believe, Your Honor, that the term one instance of information is ever defined in the specification, but I would submit that it's an unambiguous, simple, plain English language that there's one instance of data in the database. But I cannot point to a location in the specification where that term is defined. Let me drill down just a little bit. In your opening phrase, you say the examiner appeared to concede that the structure, your emphasis, of the item records having fields was entitled to patentable weight. And you cite it, JA 722. I don't see any concession in there. How do you get that to be a concession? The Patent Board stated on page... I believe it was a cite to the examiner. We're distinguishing In re Lauri, you say. I don't find that to be a concession. I want to know how you do. I apologize, Your Honor. Could you give me the cite again? Page 16 of your brief. I believe that that, Your Honor, has got to be an incorrect citation, and I believe that the concession is actually on page 759. Ah, OK. You know, when you give me a cite and I check it, it doesn't help. I apologize, Your Honor. The point that we were attempting to make in the brief was that the examiner and the board ruled that while they were willing to give patentable weight to organization or structure, that they ruled that the business domain-specific fields were not structural or organizational, that they were simply labels, like a label for a department in a business. And that is where the specification here makes it clear that this is a different that this is not a label, this is a process-based organization. And that is clear at numerous places in the specification, including on 11620 at 5, 57 to 64, 11623 at 11, 32 to 36, 11627 at 20, 26 to 28, and 11630 at 25 to 16. Each of these citations describes the business domain specifically as a process and requires specifically that it be broken down into four, not five or three or six, sub-processes, and that those sub-processes should have information workers assigned to them depending on their functional role in the business. And that is what makes this structural and what we believe the examiner and the board missed when they essentially read the word domain out of the patent. If you look at both the examiner's opinion and the board's opinion, they don't even use the word domain. They've reduced it to business-specific fields. In other words, a field having anything to do with business. So they've actually literally read the word domain out of the patent. Mr. Hermansen, you're into your rebuttal time. Do you want to save it? I will save my time for rebuttal. Thank you. Ms. Stewart? May it please the Court. I think that Big Baboon is reinventing its patent before the Court. If you look at the specification column 12, when it refers to business domains, it says that there are different business domains and then it says, e.g., for example. This is in the last paragraph in column 12. Different business domains, for example, and then for are listed. It is not this idea of these four business spheres or domains or whatever they want to call them now in addressing the reexamination is not what they claimed when they were applying for this patent to the PTO about what made the application patentable. Additionally, if you look at claim 17 that they're placing emphasis on today before the Court, that claim, I think, is being read with a particularly broad gloss. What the claim specifically says is information stored within a field of one item record appears only once. Now, I don't know as a practical matter how anyone would ever show that in a business, but if that's the limitation they're reading in, SAP teaches that because SAP teaches, as the examiner found, the structure of a customer master record. That's on 11763 of the appendix. There, SAP says both the accounting department and the sales and distribution department have access to the customer master record. Then SAP goes on to say in order to avoid data redundancy, the data for both departments is stored in a common master record. Therefore, SAP clearly meets the limitation of dependent claim 17. What about your friend's argument on the other side? It's more than just a question of a master record, but it's a question of there not being any other possibility for creating a record of the same data. Well, I think that's where you have to look to the independent claim 16 and what's required. When you look at the definition of that database, that's a potentially tiny database because it says stored in the database, there's an item table comprising item records. Well, that could be one or two records. Then it says a plurality of business domains, which Big Baboon concedes could mean two. The database, as defined by claim 16, could have one record with two fields referring to two business domains. That is the minimum requirement to meet the limitation of claim 16. When you look at the SAP reference, as I pointed to in 11.673, you have records, you have two departments, domains, processes, whatever word you want to use, it's met by the SAP reference in this place. And I think it was fair for the board and the examiner to say the avoidance of data redundancy, the discussion of common records, is substantial evidence to say with respect to this one aspect of that item record, information is appearing only once. But it didn't stop there. The board also referred to this idea of the system as a whole and what they referred to as the fishbowl. Now, Appellant has said our system is special because SAP creates multiple documents. Well, Your Honors, what business with a database would not create a different document for a purchase order or a return? I mean, of course multiple documents are going to be created in a database system for a large business. The question is, is this coming from a central place? And the examiner and the board also referred to the exact same example given by Big Baboon in their reply brief about this reversible system where you start by placing an order and you go to delivery and then you can reverse it and make a return. And that's exactly what's shown in the SAP reference on 11.669, which is the document flow from quotation to sales to delivery to invoice to returns and then back again. So every time that Big Baboon attempts to distinguish its system from the SAP system, we're very fortunate that those limitations are taught explicitly in the SAP reference. But isn't the point of the additional limitation of Claim 17 that instead of creating multiple records of, for instance, the same transaction, whether you have a return somewhere, you have a purchase somewhere, you've got one place where all of those changes have to be reflected? Isn't that the point of Claim 17? Well, I think that is the goal of Claim 17 and that is kind of an overarching goal, I think, of the business model. But that, you have to look at what's exactly claimed. And because the database is so small, I mean, one item record with two domains, with two field references, it would be wonderful to sweep in an entire multinational business into Claim 16 and 17, but that's just not claimed. So basically what you're saying is that R3 shows some situations in which redundancy is avoided and with respect to some segments of an overall database and that's sufficient. We believe that's sufficient, but we also think that the aspects of R3 that we're teaching that are major components of their system. It's the master record for the customer and it's also the general ledger for the system. So this isn't some passing reference to one sub-ledger somewhere in a very large system. These are two major components of the system. I'm confused by what you're interpreting Claim 17 to mean. I mean, I put aside what R3 shows. How are you saying this is a small database? It says information stored within a field of an item record is the only instance of that information within the entire database. So why are you saying that item record defines the scope of the database? I mean, that doesn't even make sense to me grammatically. I agree with you and I didn't mean to suggest that. What I'm trying to say is when it says within the entire database and it's dependent on Claim 16, Claim 16 defines its database as follows. An item table comprising item record, each item record containing business domain specific fields. So if this were a very, very small database, I mean one database with maybe one or two records and one or two business spheres, you would meet the claim limitation of 16 and therefore what 17 would add as a dependent would mean that within one item record it's the only instance of that information within the larger database, which could be quite small and still meet the limitations of Claim 16. And if Your Honors have no more questions, since Big Baboon isn't arguing about Claim 16 in general, then I will conclude my argument. Okay, thank you. I'd like to respond first to the point about there being substantial evidence. We contend here that the standard review ought to be de novo because the errors committed by the board. De novo, why? Because it's a claim construction error by the board and by the examiner in reading out these critical structural limitations. And when they interpreted the claim language, it's clear from the patent board's opinion that the factual findings did not include anything outside the scope of the patent. There was no extrinsic evidence. So there was no factual findings that would justify a clear error standard. And we're not looking at the amount of evidence. We're looking at whether they compared the right invention to SAP. And we submit that by reading out the critical claim language, they did not compare the right invention. So it's actually an issue of claim construction. Which critical claim language is being read out? They read out the word domain. They read out the term immediately available. And then they misinterpreted the term one instance of data to mean a master record that reduces duplication, when the language in plain English on its face means one instance of data. Did you argue this as a claim construction issue before the board? It was argued that they misinterpreted it. The issue of whether it was a de novo review was not argued because it wasn't an issue there. But you didn't argue it as a claim construction. You argued that they misinterpreted what R3 disclosed for purposes of an anticipation analysis, didn't you? And that they misinterpreted the terms of the patent claim as well, Your Honor. How did they misinterpret item record? It's not the term item record that they misinterpreted. It's business domain. The item record contains at least fields that relate to at least two business domains. How did they misinterpret business domain? They interpreted it as a business department, a physical business department, instead of organizing the business according to process-based segments, functional segments. The last thing I would like to close with is if you look at the appendix at 11772, which I referred to earlier working with canceling billing documents, it makes it clear that the R3 does not simply have one instance of data, even though it has a master record. And I'll simply read to you the first several lines from this page in the R3 manual. When you cancel a billing document, you are actually creating a cancellation document. The cancellation document copies data from the reference document and transfers an offsetting entry to the accounting department. That is not one instance of data. That's at least three instances of data. My time is up, Your Honors. Thank you. Okay, thank you, Mr. Munzer. Thank both counsel. The case is submitted.